# City of Paducah v. Katterjohn et al.

(Decided June 20, 1930.)

W. V. EATON for appellant.

W. MIKE OLIVER for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

The city of Paducah brought this action under the Declaratory Judgment Act (Acts 1922, c. 83) against appellees to obtain a declaration of rights concerning a strip of ground 40 feet in width connecting Brown street with Caldwell avenue near the Union Station. The issues were made up and proof taken. The circuit court entered judgment in favor of the defendants. The city appeals.

The Union Station is located in the southern part of the city and just within the city limits. It was built in 1900-01, and has since been used. In 1884 the Katerjohn Brick Company owned a tract of land just outside of the city limits on which it conducted a brick-making plant. To get to its plant and to enable its customers to get there, they opened a road which connected with Caldwell avenue. This road ran over the strip in controversy. There was a bad place in it, and when this got muddy they used another way for a while, which is now an alley parallel to this street. The brick company quit making bricks about the year 1913 and in 1917 conveyed the land it owned to appellee F. W. Katterjohn. At this time the public had been using for many years the road.

referred to, which ran just alongside of the Union Station. The brick company had made a conveyance in 1901 to a lot opposite the station and 40 feet from the right of way, leaving this 40-foot space which was then in use by the public to get to the station. About 1910 the city built a bridge over Island creek, which turned a very much larger amount of travel into Brown street, and the only way to get to the city from Brown street was to pass ofer this strip referred to, which was about 800 feet long. After 1910 the travel over the strip from Brown street to the city and for the purpose of unloading strawberries and other things at the station was much heavier than before, and without objection from anybody. When the road got in bad order, while the brick company was there, they put some brick bats and cinders in it occasionally, and the city from time to time ran a grader on it. After appellee W. F. Katterjohn bought the property in 1917, the city was proposing to improve the strip as a street of the city, but Katterjohn served a written notice on the city that it was his private property and that the city should not enter upon it. He was then the mayor of the city and no action was taken by it. He did not own all the strip, and of course his notice only referred to the part of it which he owned. In 1923 an ice plant was located out on the Katterjohn property, and the ice company, to get to and from its plant and enable its customers to get there, improved this strip by putting gravel on it. Thus things ran along for about a year, when a proposition was made for all the property owners to deed this strip to the city for a street. Katterjohn inserted in his deed a provision that he should have the right to lay out a railroad track in the street. The city refused to accept the deed, and the proposition fell through. Thus things ran along, the public using the strip as they had before, until April, 1929, when this action was brought.

F. W. Katterjohn insists that the strip is his land, and that he has never laid it off as a street, and that he did not include it in the deeds he made, for the reason that he reserved this strip for railroad side tracks, which he wished to run out into his other land for the purpose of attracting there manufacturing enterprises or warehouses. The strip is not called a street in any of the deeds which he executed, and it is not laid out as a street in any plot that he filed anywhere, except a plot that he

made about the time that he tendered the deed to the city, which was in fact a part of that plan of settlement. But the lots that he conveyed run back to a 20-foot alley, and the houses were all built fronting on this strip of ground. In one of the deeds the grantee was authorized to pass over this strip without limitation as to direction, and, while a number of houses were built on these lots, the strip was always used by everybody for ingress and egress. One of the lot owners, appellee W. M. Dunn, built the porch of his house on the strip. This he did with the consent of Katterjohn. Some years ago the city laid down on this strip a water main and a sewer and made connections with the different houses just as are usually made in houses fronting on a street. Katterjohn insists that, while the strip has been used by the public, the use has been only by his permission, and that the city has acquired no rights. But the fact is that, since the Union Station was built, this strip has been used by the public without let or hindrance as a means of access to the station. The use has been so long and to such a large extent that, after the lapse of so many years, the rights of the public to the use of the strip cannot be denied. A large strawberry business has developed at Paducah, This strawberry business is, in the main, conducted over this strip. It is the main thoroughfare from the part of the city lying southeast of the Union Station to the central part of the city, and this has been the case at least since 1910. The weight of the evidence shows that the use of the strip 40 feet wide has been continuous for at least twenty years. Something like 500 cars or other vehicles pass over it a day. It is in fact one of the main thoroughfares of this part of the city, and has been used so long that the public use cannot be disturbed.

"A continued, uninterrupted, and adverse use of a highway as such by the public, as a right, for the period of 15 years, creates a conclusive presumption of dedication and acceptance of it." Louisville, Henderson, etc., Ry. Co. v. Com., 104 Ky. 35, 46 S. W. 207, 209, 20 Ky. Law Rep. 371.

"The road in question had been used by the public for a sufficient period of time to constitute it a highway, with the right of free travel thereon as between the public and the owners of the soil over which the road runs." Rose v. Nolen, 166 Ky. 337, 179 S. W. 229, 230.

To the same effect, see Gatewood v. Cooper, 38 S. W. 690, 18 Ky. Law Rep. 869; Smith v. I. C. R. Co., 105 S. W. 96, 31 Ky. Law Rep. 1323.

The city passed an ordinance declaring the strip to have been dedicated as a street and accepting the dedication pursuant to section 3094, Kentucky Statutes, which provides: "When any parcel of ground shall have heretofore been, or shall hereafter be, laid off as a street, avenue or alley, and opened to the unrestricted use of the general public for five consecutive years, it shall be conclusively presumed to have been dedicated to the city as a public street, avenue or alley of the city, subject, however, to acceptance by the city, and the city may, at any time after the expiration of five years from the time such parcel of ground is laid off and opened to the public, pass an ordinance declaring such parcel of ground to have been so dedicated, and accepting the dedication thereof; whereupon it shall become and be a public street, avenue or alley of the city for all purposes."

A dedication of the ground as a street must be presumed after such long and continuous public use as is here shown, notwithstanding the owner may not have in fact so intended. The case falls within the well-settled rule which is thus stated in 18 C. J. p. 53, sec. 34: "The intention to dedicate to which courts give heed is not an intention hidden in the mind of the landowner, but an intention manifested by his acts. It is not always necessary that an actual intention should exist in the mind of the owner at the time of the alleged dedication. If the intention is clearly expressed by his open acts and visible conduct, the public and individual citizens may act upon it; and the fact that the owner may have entertained a different intention from that manifested by his acts or declarations, or that in making the dedication he may have acted under a mistake of fact, is of no consequence; and if the owner showed an intent he cannot defeat the effect of his acts by subsequently stating that he did not intend to make a dedication."

While Katterjohn told the people to whom he conveyed that he reserved this strip, he did nothing to bring this to the notice of the public who were using this strip as a matter of right. The strip was necessary as an approach to the depot for a large part of the business done there, and he acquiesced in such use of it by the public so long that he cannot now assert rights thereto.

W. M. Dunn entered under Katterjohn and built his porch out on the strip by Katterjohn's permission. He has no better right than Katterjohn. Under his deed he has the right to pass over this strip, but he will have this right in the street. The strip 40 feet wide, under the circumstances, was dedicatd. Dunn's permissive use of the 10 feet covered by his porch has created no right in him thereto. The fact that he held it by permission when not needed by the public and with no assertion of right by him affects in no way the rights of the parties.

Judgment reversed, and cause remanded for a judgment as above indicated.